UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| MIDWEST PRODUCTS, INC., | CASE NO.: |
| Plaintiff, | JUDGE |
| vs. | **(Demand for Jury Trial)** |
| BLUE LINE CRAFTS LLC. | |
| and | |
| ROBERT D. HUTCHINSON, JR. | |
| Defendants. | |

**COMPLAINT**

Plaintiff Midwest Products, Inc. ("Midwest Products") hereby files its Complaint for patent infringement against Defendants Blue Line Crafts LLC ("Blue Line") and Robert D. Hutchinson, Jr. ("Hutchinson"), on personal knowledge as to Plaintiff's own activities and on information and belief as to the activities of others:

**NATURE OF THE ACTION**

1. This is a patent infringement case arising under the patent laws of the United States 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271.

2. This case regards infringement of three of Midwest Products' patents for embroidery hoops.

3. An embroidery hoop is a frame that is used to hold fabric taut while it is being embroidered. An embroidery hoop comprises two frame members or rings. The fabric is placed between the two frame members, and the fabric is tightened so that it is stretched evenly across the hoop. This creates a flat, stable surface for embroidering that makes it easier to stitch a design without wrinkling or puckering the fabric.

4. Embroidery hoops manufactured by Midwest Products and covered by U.S. Patent No. 7,607,399 ("the '399 patent" attached as Exhibit 1), U.S. Patent No. 7,918,169 ("the '169 patent"

attached as Exhibit 2), and U.S. Patent No. 8,661,995 ("the '995 patent" attached as Exhibit 3) include a top and a bottom hoop ring as shown below at left in Figure 1, which are magnetically attracted to one another and can be placed together as shown below at right in Figure 1:



Figure 1

5. The top and bottom hoops engage and hold fabric taut between the hoops while the fabric is being embroidered as shown below in Figure 2, where the top ring is visible (and the bottom hoop concealed from view under a layer of fabric).



Figure 2

6. After the embroidery hoops are secured on the fabric to be embroidered, one of the embroidery hoops is secured to one or more pantographs of an embroidery machine, and the pantograph holds and moves the embroidery hoops (and the fabric secured thereto) under an operational sewing needle to create a desired embroidery design on the fabric.

## PARTIES, JURISDICTION, AND VENUE

7. Midwest Products is a corporation organized under the laws of the State of Wisconsin.

8. Blue Line is an Ohio corporation incorporated and with a principal place of business located at 552 Cove Beach Avenue, Sheffield Lake, OH 44054.

9. Upon information and belief, Hutchinson resides at 552 Cove Beach Avenue, Sheffield Lake, OH 44054.

10. This Court has original jurisdiction over the subject matter of this action under at least 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Blue Line because Blue Line is an Ohio corporation, operating its headquarters within this district.

12. Venue in this action is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND

### *Midwest Products*

13. Midwest Products started in 1983 as a small home embroidery business called Midwest Embroidery. It quickly grew into a large embroidery company that did contract embroidery for companies like McDonalds, Coca-Cola, Briggs and Stratton, and even the Olympic Games.

14. In response to a need for a quick and accurate way to hoop, Midwest Products developed its own hooping device. Business took off from there. Midwest Products' hooping devices were extremely well received within the embroidery community.

15. Since 1998, Midwest Products has sold thousands of hooping devices in over 95 countries.

16. Knowing the demand for more intuitive hooping aids, Midwest Products invented, patented, and introduced to the embroidery industry products known as Mighty Hoop® hoops for holding fabric or other material on an embroidery machine.

17. Midwest Products is the owner by assignment of the '399 patent entitled "Magnetic Fabric Retaining Device."

18. Midwest Products is the owner by assignment of the '169 patent entitled "Magnetic Fabric Retaining Device."

19. Midwest Products is the owner by assignment of the '995 patent entitled "Magnetic Fabric Retaining Device."

*The Accused Devices*

20. The Accused Device(s) is a Sew Tech Maggie Frame (or MaggieFrame) magnetic hoop which has been imported into the United States of America ("the Accused Devices" or when referred to singularly, an "Accused Device").

21. A visual comparison of hoop rings of an Accused Device and genuine Midwest Products hoop rings is below in Figure 3, with an Accused Device below at left (MaggieFrame model no. ST-M1212, used by Blue Line, is pictured), and genuine Midwest Products hoop ring below at right.



Figure 3

22. The Accused Devices are material retaining devices for an item to be embroidered by an embroidery machine.

23. The Accused Devices each have two hoops, a first hoop and a second hoop.

24. An exemplary Accused Device is shown below in Figure 4 ("the first hoop") at left, with an actual Accused Device in the possession and control of Hutchinson and Blue Line shown at right:

36396691.1



Figure 4

Figure 5

27. The first hoop of an Accused Device has a plurality of individual spaced apart magnets.

28. A plurality of individual spaced apart magnets are positioned in the first hoop of an Accused Device at locations circled in yellow and labeled as "Magnet" on the bottom side of the first hoop of an exemplary Accused Device as shown below in Figure 6, and at locations circled in black and labeled on the top side of the first hoop of an exemplary Accused Device as "Strong Magnets", as shown below in Figure 7:

36396691.1



Figure 6



Figure 7

29. Individual spaced apart magnets of the first hoop of an Accused Device are metal.

30. Upon information and belief, individual spaced apart magnets of the first hoop of an Accused Device are rare earth magnets.

36396691.1

31. Magnets are metal.

32. The first hoop of an Accused Device has a non-magnetic material.

33. Non-magnetic material of the first hoop of an Accused Device is, for instance but not limited to, green material, labeled as "Non-magnetic Material" in Figure 5 above.

34. The first hoop of an Accused Device has a ridge formed thereon.

35. A ridge of an Accused Device is labeled as "Ridge" in Figure 5 above.

36. The first hoop of an Accused Device has at least one mounting arm for attachment to an embroidery machine.

37. At least one mounting arm of an Accused Device is detachable from an Accused Device, and therefore capable of being interchanged with another mounting arm.

38. A mounting arm of an Accused Device, for attachment to an embroidery machine, is labeled as "Mounting Arm" in Figure 5 above.

39. The plurality of individual spaced apart magnets of the first hoop of an Accused Device are attached to the non-magnetic material of the first hoop.

40. A top side of the first hoop of an Accused Device is shown below in Fig. 8:



Figure 8

41. A top side of the second hoop of an exemplary Accused Device is shown below in Figure 9:

36396691.1



Figure 9

42. The second hoop of an Accused Device has an opening therethrough.

43. An opening through the second hoop of an exemplary Accused Device labeled as "Opening" is shown below in Figure 10:



Figure 10

8

36396691.1

44. The second hoop of an Accused Device has a plurality of individual spaced apart magnets.

45. A plurality of individual spaced apart magnets are positioned in the second hoop of an Accused Device at locations circled in yellow and labeled as "Magnet" on the top side of the second hoop of an exemplary Accused Device as shown above in Figure 10, and at locations circled in black and labeled on the bottom side of the second hoop of an exemplary Accused Device as "Strong Magnets", as shown below in Figures 11 and 12:



Figure 51



Figure 62

46. Individual spaced apart magnets of the second hoop of an Accused Device are metal.

47. The second hoop of an Accused Device has a quantity of metal sufficient for the first hoop to be attracted to the second hoop.

48. Magnetic attraction between the first hoop and the second hoop of an Accused Device

9

36396691.1

enables material to be held in place between the first hoop and the second hoop for embroidery.

49. The second hoop of an Accused Device is separable from the first hoop of an Accused Device at least when the second hoop is magnetically disengaged from the first hoop.

50. The first hoop of an Accused Device is adapted to be supported directly by an embroidery machine.

51. The first hoop of an Accused Device is adapted to be supported directly by an embroidery machine, by mounting arms carried by the first hoop.

52. The second hoop of an Accused Device is not adapted to be supported directly by an embroidery machine.

53. During use, the second hoop of an Accused Device is held substantially stationary relative to the first hoop of an Accused Device by the magnetic attraction between the first hoop of an Accused Device and the second hoop of an Accused Device.

*Facts Common to All Causes of Action*

54. Upon information and belief, one or more third-parties, including but not limited to, at least one of Sewtech Industry Co. Ltd., and Shanghai Vulcan Industrial Co., Ltd. ("Third-Party Manufacturer"), manufacture the Accused Devices.

55. Hutchinson, while located in the United States of America, purchased one or more Accused Devices from the Third-Party Sellers.

56. Hutchinson has actual knowledge of the '399 patent, the '169 patent, and the '995 patent, since at least as early as Midwest Products provided Hutchinson with actual knowledge in May, 2025.

57. Upon information and belief, Hutchinson owns at least eight (8) Accused Devices.

58. Hutchinson and Blue Line used one or more Accused Devices.

59. Hutchinson, through postings on social media, encouraged others to purchase, import and use the Accused Devices.

60. Hutchinson disseminated falsehoods regarding the status of Midwest Products' intellectual property portfolio.

61. Specifically, in communication with a BAI Embroidery Users Group on Facebook,

Hutchinson stated "Sorry that I refuse to pay double and triple the price for a subpar product just because you have a patent pending." That is false, Midwest has *patents* that cover the Accused Devices – not patent *pending*.

62. Others in the BAI Embroidery Users Group took note of this falsehood. For instance, one user identified as Brian Bean stated "Just saw patent pending. He's SOL then." In fact, Midwest has *patents* that cover the Accused Devices – not patent *pending*.

63. Another user in the BAI Embroidery Users Group took note of this falsehood and perpetuated it. Mary Via stated "Disney is a well established company and has patent for sure, this one is just pending… so, technically they don't own it yet…"

64. Hutchinson stated "the best part is they are trying to get a patent on something that's already patented by someone else." That is false, Midwest Products is not trying to get a patent, Midwest already has several patents. And the patents are owned by Midwest Products, not someone else.

65. Hutchinson stated "it's a piece of plastic with magnets in it. You can go after that business that you believe is infringing on your patent all you want, but you do not threaten people that have purchased products from that company." Hutchinson continued: "[t]hey have no legal foot to stand on which is why they are targeting customers instead of the actual business." Although Hutchinson is correct that Midwest Products could sue the Third-Party Manufacturer of the Accused Devices, and the seller of the Accused Devices, and the importer of the Accused Devices, the statement by Hutchinson that users of infringing products are not infringers is false. 35 U.S.C. § 271(a) also prohibits use of any patented invention, and use of a patented invention is one form of patent infringement.

66. Because Hutchinson was spreading these falsehoods, users in the BAI Embroidery Users Group perpetuated these falsehoods, leading to the spreading impression that Midwest Products does not have patents - only patents pending (false), and that end users of infringing products are somehow immune from infringement (false).

67. Hutchinson specifically induced others, including users in the BAI Embroidery Users

11

Group, to infringe Midwest Products' patents by directing them to MaggieFrames' online store, and by suggesting an infringing alternative in MaggieFrames because they are, in Hutchinson's own words, a "cheaper option."

## FIRST CLAIM FOR RELIEF
### Patent Infringement of the '399 Patent

68. Midwest Products realleges and incorporates the foregoing paragraphs as though fully set forth herein.

69. The Accused Devices contain all elements of at least claims 1, 2, 3, 4, 5, 7, and 8 of the '399 patent.

70. Blue Line and Hutchinson have infringed at least one claim of the '399 patent by using Accused Devices in contravention of 35 U.S.C. § 271(a), or encouraging others to purchase and use in contravention of 35 U.S.C. § 271(b), a patented invention; namely, the Accused Devices.

71. Blue Line and Hutchinson have induced, and continue to induce, infringement of at least one claim of the '399 patent in contravention of 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting sales and offers for sale of the Accused Devices in the United States of America by at least one of the Third-Party Sellers, with the specific intent to encourage their infringement.

72. Blue Line and Hutchinson have induced, and continue to induce, infringement of at least one claim of the '399 patent in contravention of 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting use of the Accused Devices by consumers and end users of the Accused Devices in the United States of America with the specific intent to encourage their infringement.

73. Midwest Products, as a direct and proximate result of aforesaid acts of infringement, has suffered both past, present, and on-going monetary damages in amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Patent Infringement of the '995 Patent

74. Midwest Products realleges and incorporates the foregoing paragraphs as though fully set forth herein.

75. The Accused Devices contain all elements of at least claims 1, 2, 3, 5, 6, 7, 8, 9, 10, 11,

16, and 18 of the '995 patent.

76. Blue Line and Hutchinson have infringed at least one claim of the '995 patent by using Accused Devices in contravention of 35 U.S.C. § 271(a), or encouraging others to purchase and use in contravention of 35 U.S.C. § 271(b), a patented invention; namely, the Accused Devices.

77. Blue Line and Hutchinson have induced, and continue to induce, infringement of at least one claim of the '995 patent in contravention of 35 U.S.C. § 271(b) by, among other things, actively aiding and abetting sales and offers for sale of the Accused Devices in the United States of America by at least one of the Third-Party Sellers, with the specific intent to encourage their infringement.

78. Blue Line and Hutchinson have induced, and continue to induce, infringement of at least one claim of the '995 patent in contravention of 35 U.S.C. § 271(b) by, among other things, actively and knowingly aiding and abetting use of the Accused Devices by consumers and end users of the Accused Devices in the United States of America with the specific intent to encourage their infringement.

79. Midwest Products, as a direct and proximate result of aforesaid acts of infringement, has suffered both past, present, and on-going monetary damages in amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### Patent Infringement of the '169 Patent

80. Midwest Products realleges and incorporates the foregoing paragraphs as though fully set forth herein.

81. Hutchinson and Blue Line directly infringe claim 9 of the '169 patent by use of the Accused Devices.

82. Hutchinson and Blue Line have induced direct infringement of claim 9 of the '169 patent by encouraging others to use a patented invention; namely, the Accused Devices.

83. Midwest Products, as a direct and proximate result of aforesaid acts of infringement, has suffered both past, present, and on-going monetary damages in amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Defamation (Libel)

84. Midwest Products realleges and incorporates the foregoing paragraphs as though fully

set forth herein.

85. Hutchinson has libeled Midwest Products by maliciously creating false posts on Facebook; namely, that Midwest Products has only patents pending (Midwest Products in fact has patents), and that end-users of infringing Accused Devices are not liable for patent infringement (they are).

86. These statements are libel per se.

87. Hutchinson made these statements with express or actual malice, that is, with knowledge that the statements are false or with reckless disregard of whether they were false.

88. As a result of these false statements, Midwest Products has seen a measurable decline in inquiries and sales of its Mighty Hoop® products, particularly from customers engaged with the BAI Embroidery Users Group on Facebook.

89. As a direct and proximate result of Hutchinson's dissemination of these falsehoods, Midwest Products has been subject to ridicule, contempt or hatred, and Midwest Products has been injured in its trade or profession. Namely, users of BAI Embroidery Users Group on Facebook have stated that they will not purchase genuine Midwest Products goods. Upon information and belief, these sentiments are at least partially due to Hutchinson's false statements.

## PRAYER FOR RELIEF

WHEREFORE, Midwest Products respectfully requests the following relief:

a. The entry of judgment in its favor, and against Defendants, Blue Line and Hutchinson, declaring that Blue Line and Hutchinson have infringed one or more claims of the '399 patent and the '995 patent under 35 U.S.C. § 271(a), and has induced infringement of one or more claims of the '169 patent, '399 patent and the '995 patent under 35 U.S.C. § 271(b), that this infringement has been deliberate and for libel and defamation;

b. The entry of preliminary and permanent injunctive relief enjoining Blue Line and Hutchinson from: (1) infringing or inducing infringement of the '169 patent, '399 patent and the '995 patent, and (2) any continued publication of false statements;

14

c. The entry of judgment that this is an exceptional case under 35 U.S.C. § 285;

d. An award to Midwest Products of damages adequate to compensate for Blue Line and Hutchinson's infringement and defamation, including an award of prejudgment and post judgment interest, trebled or increased in such other amount as the Court shall deem appropriate on a finding of willful infringement;

e. An award to Midwest Products of its costs and disbursements in this action, including its attorneys' fees;

f. Prejudgment interest, on all claims and including but not limited to at least 35 U.S.C. § 284;

g. Post-judgment interest on all claims and including but not limited to at least 28 U.S.C. § 1961(a);

h. That Hutchinson and Blue Line be ordered to remove all libelous posts from social media;

i. For actual and punitive damages as a result of the harm caused to plaintiff's reputation, lost business due to falsehoods, and legal fees in stopping these falsehoods; and

j. Such other relief as this Court deems just and proper.

Dated:  June 25, 2025

Respectfully submitted,

*s/      David B. Cupar*
David B. Cupar (OH Bar No. 0071622)
Benjamin Foote-Huth (OH Bar No. 104192)
McDONALD HOPKINS
600 Superior Avenue East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
dcupar@mcdonaldhopkins.com
bfootehuth@mcdonaldhopkins.com

36396691.1

and

Daniel R. Johnson (*Pro Hac Vice* forthcoming)
RYAN KROMHOLZ & MANION, S.C.
P. O. Box 26618
Milwaukee, Wisconsin 53226-0618
djohnson@ rkmiplaw.com

*Attorneys for Plaintiff Midwest Products, Inc.*

## Jury Demand

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands and requests a trial by jury of all claims and issues so triable.

*s/ David B. Cupar*
*Attorney for Plaintiff Midwest Products, Inc.*